OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1908.

---

In the matter of STATE MUTUAL BUILDING AND LOAN ASSOCIATION OF NEW JERSEY, in liquidation.

[Argued June 24th, 1908. Decided November 16th, 1908.]

The rule laid down in the case of *Weir* v. *Granite State Provident Association, 56 N. J. Eq. (11 Dick.) 234*, approved by this court in *Harris, Receiver,* v. *Nevins, 68 N. J. Eq. (2 Robb.) 684*, does not apply to mortgage debts of borrowing shareholders of building and loan associations that became due not by the insolvency of such association but according to the terms of such mortgages and under the by-laws of the association by the default of the borrower himself prior to the insolvency of the association. As to debts thus due and collectible by the association as a going concern a receiver afterward appointed proceeds in like manner as the directors of the association might have done if insolvency had not supervened.

---

On appeal from a decree advised by Vice-Chancellor Leaming, whose opinion is reported in *68 Atl. Rep. 108.*

.807

*Mr. Harvey F. Carr,* for the appellants, the receivers of the association.

*Mr. William N. Clevenger, Mr. Eli H. Chandler* and *Mr. William S. Casselman,* for the several respondents.

The opinion of the court was delivered by

GARRISON, J.

In *Fitzgerald* v. *State Mutual Building and Loan Association, 69 Atl. Rep. 564,* we held that trustees elected by stockholders under the provisions of chapter 24 of the laws of 1904 (*P. L. 1904 p. 44*) were not the proper officers to wind up an insolvent building and loan association and that a receiver for the defendant should forthwith be appointed. This decision was carried into effect in the court of chancery by the appointment of three receivers, who are the appellants in the proceeding that is now before us, which was instituted by the trustees while engaged *de facto* in winding up the affairs of the insolvent association. In that capacity the trustees filed a petition, which is the basis of the present proceeding, and before being displaced they also took an appeal from the order made by the court of chancery on their said petition. This appeal the receivers upon assuming the duties of their office adopted and hence they now appear, and properly so, as appellants in the proceeding thus set on foot by the petition of the late trustees. The petition was filed by the trustees to obtain the direction of the court of chancery with respect to what credits upon the principal sum secured by mortgages should be allowed for premiums paid by the shareholding mortgagors—*first,* in cases called in the petition class No. 1, where the borrowing shareholder had fully paid all dues, interest and premiums up to and including those for the month of April, 1907, that being the date of liquidation stated in the petition, and *secondly,* in cases called class No. 2, where the borrowing shareholders prior to such date of liquidation had defaulted in the payment of said dues, interest and premiums, so that by the conditions of their mortgages and under the by-laws of the association the principal sum of said mortgages had become due

and payable. The petition further set out the facts of three concrete cases, one falling under class No. 1, and two falling under class No. 2, with respect to which latter cases the petition states that "under the terms of said bonds and mortgages the association has exercised its option of declaring the full principal sums of the said mortgages as due and payable." By a stipulation all of the facts stated in the petition are admitted to be true, which includes the date of liquidation. There is, furthermore, a general statement that a large part of the assets of the association consists of mortgages that fall within one or the other of the two classes, and the brief of counsel for the appellants contains the unchallenged statement that mortgages aggregating $125,000 fall within class No. 2, and that as to these mortgages, the item of premium alone amounts to $45,000. But whether the concrete facts respecting these mortgages are identical with those of the two specified cases set forth in the petition we are not informed, nor are the shareholding mortgagors other than those in the two specified cases brought into court as parties defendant.

It is evident, therefore, that apart from the two specified cases the direction sought by the petition was of a general character and it is equally evident that what the petition sought to ascertain was whether the rule laid down in the court of chancery in the case of *Weir* v. *Granite State Provident Association,* *56 N. J. Eq. (11 Dick.) 234,* and approved by this court in *Harris* v. *Nevins, 68 N. J. Eq. (2 Robb.) 684,* was applicable to class No. 1, where liquidation other than by insolvency was being enforced, but chiefly whether this rule, if applicable to class No. 1, was also to be applied to class No. 2.

The first of these questions, which was answered by the court below to the effect that class No. 1 came within the rule laid down by *Harris* v. *Nevins,* is not now before us, the appellants having expressly abandoned their appeal as to that part of the order. Mortgages coming within this class are therefore to be allowed credits in conformity with the rule laid down by the cases that have been cited.

Upon the second question, which was the chief one and is the only one before us on this appeal, the learned vice-chancellor reached the conclusion that the rule applicable to class No. 1

should also be applied to class No. 2; that is, mortgages that by the non-payment of dues, interest and premiums had before the date of liquidation become due and payable according to the conditions of the said mortgages and the by-laws of the association, and the conclusion thus reached is embodied in the order appealed from, which in its direction makes no distinction between the two classes of mortgage debts. In reaching this conclusion we think that the learned vice-chancellor fell into error and that his error consists in his failure to observe that the two classes of mortgages were clearly to be distinguished upon the essential features that constituted the basis of the equitable rule laid down in *Weir* v. *Granite State Provident Association* and *Harris* v. *Nevins*. The equitable considerations that gave rise to the rule laid down in these cases were, as stated by Vice-Chancellor Reed in the earlier decision, that the premiums had been paid by the borrowing shareholder in consideration of the complete execution of a contract that permitted him to pay his debts by the application of his matured shares, and when the premature termination of the existence of the company prevented the borrower from thus liquidating his debt, the contract in consideration of which he had paid his premiums had failed. The gist of this equity of the borrowing shareholder, therefore, was that his debt had become not only prematurely collectible *in invilum* and by the effect of insolvency, but that it had thus become collectible in a way and at a time entirely different from that for which he had paid the consideration represented by his premiums. The contractual relations of the parties as evidenced by their mortgages and by the by-laws of the association affording no legal rule applicable to this juncture, recourse to some equitable mode of adjustment was manifestly proper, and the rule laid down in the two cases cited was the result. But in the case of a borrowing shareholder whose debt has become due not *in invitum* by the effect of insolvency, but according to its own terms and solely by the act of the borrower himself there is nothing to call for the application of any rule other than that provided by the contract of the parties for just such a contingency. In such cases the fact that enforced liquidation or insolvency supervened, after the borrower's debt had by its own

terms and by his default become due, no more gives him a standing in equity than would the breakdown of a train before reaching its destination create a legal right in a passenger, who had voluntarily left the train before the breakdown occurred. The two classes of cases are, therefore, distinguishable upon the precise feature that invokes the equitable rule in class No. 1, while relegating class No. 2 to the terms of its legal contracts. As to mortgage debts, therefore, that were thus due by the default of the debtor and collectible by the association while it was a going concern, the appellants as receivers stand in precisely the same situation as the directors of the association stood when the debts fell due. As to such cases no equitable rule is to be applied, for the simple reason that the mere breach of a legal contract, nothing more appearing, gives rise to no equitable considerations of any sort. If circumstances other than those stated in the petition before us should call for equitable treatment, such cases must be dealt with as they arise and upon their own peculiar facts and when the parties in interest are before the court. Upon the only question now before us the receiver should be directed to proceed to the collection of all mortgage debts that were due from borrowers prior to the date of liquidation precisely as if enforced liquidation or proceedings in insolvency had not supervened. Specific direction in such cases is not within the purview or prayer of the petition and is not presented by this appeal. If foreclosure proceedings are defended, or if a mortgagor files his bill to redeem, as was done in the *Weir Case,* the facts constituting such defence or such suit to redeem may be dealt with as they arise, for, as was observed by Vice-Chancellor Reed in the *Weir Case,* the right to foreclose and the right to redeem are so far reciprocal that questions material to the ascertainment of the debt due on the mortgage may be as well settled in one form of action as in the other.

The order of the court of chancery should therefore be reversed to the end that it may be modified so as to apply in its present form only to mortgages that had not, while the association was a going concern, become due and payable by the mortgagor's default in the payment of dues, interest and premiums. As to mortgages that had thus become due by the default of the

shareholder as aforesaid, the receivers should be directed that in collecting or computing the amounts of such mortgages they should proceed in like manner as the directors of the association might have done if enforced liquidation or insolvency had not supervened.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—16.